COMPILER OF LAW / LAW LIBRARY

FILED
OR COURT

2013 SEP -9 PM 2: 19

COURT

# IN THE SUPERIOR COURT OF GUAM

HAWAIIAN ROCK PRODUCTS
CORPORATION,

      Plaintiff,

 vs.

OCEAN HOUSING, INC., et al.,

      Defendants.

Civil Case No.: CV0327-03

**DECISION & ORDER**
**(Motion to Dismiss)**

KORANDO CORPORATION,

      Cross-Claimant,

 vs.

OCEAN HOUSING, INC., et al.,

      Cross-Defendants.

DONALD E. WILSON AND TERESITA S.
WILSON,

      Cross-Claimants,

 vs.

OCEAN HOUSING, INC., JIN HEE LEE, et
al.,

      Cross-Defendants.

OCEAN HOUSING, INC. AND JIN HEE
LEE,

      Cross-Claimants,

 vs.

DONALD E. WILSON AND
TERESITA S. WILSON,

      Cross-Defendants.

## <u>INTRODUCTION</u>

This matter came before the Honorable Maria T. Cenzon for a hearing on February 25, 2013, on Cross-claim Plaintiff/Cross-claim Defendants' Donald E. Wilson and Teresita S.

Wilson (collectively, the "Wilsons") Motion to Dismiss, which was filed on March 9, 2012 ("Motion").[1] Attorney Gary Gumataotao represents the Wilsons. Attorney Robert Kutz represents the Cross-claim Defendants/Cross- claim Plaintiffs Ocean Housing, Inc. ("OHI") and Jin Hee Lee ("Lee") (collectively, "OHI and Lee"). The Court, having considered the Motion and the oral arguments presented during the hearing as well as the pleading and documents on file in the record of this matter, issues the following Decision and Order GRANTING the Motion and DISMISSING Cross-claim Defendants/Cross-claim Plaintiffs OHI's and Lee's claims against the Wilsons.

## FACTUAL & PROCEDURAL BACKGROUND

### I. 1995 JOINT VENTURE AGREEMENT BETWEEN OHI AND WILSONS ENDS IN DISPUTE.

This case spans over a decade and involves multiple parties, attorneys and, in fact, judges. It also involves several parties, claims, cross-claims and cross cross-claims. Its inception is a Joint Venture Agreement (the "JVA") executed on May 8, 1995, between the Wilsons and OHI, represented by its President and majority shareholder Lee.[2] Pursuant to the JVA, the parties agreed that the Wilsons would contribute real property and OHI would contribute the infrastructure, construction and costs associated with the development of residential homes on the property that would then be sold.[3] The JVA contemplated that a total of 54 residential units would be constructed by OHI on the real property contributed by the Wilsons in Dededo, Guam. Of the fifty-four (54) units planned under the JVA, less than half

---

[1] Oral argument on the Wilsons' Motion to Dismiss was originally scheduled before the Honorable Judge Elizabeth Barrett-Anderson (Ret.) on May 23, 2012; however, due to several important pleadings missing from the record, the Court continued the hearing on the Motion. A hearing was then scheduled for January 9, 2013, which, upon request of the parties, was continued until February 25, 2013. This Court was assigned to preside over this case on February 25, 2013, the same day on which oral argument was scheduled.

[2] See Affidavit of Jin Hee Lee at ¶1 (May 9, 2002)(the "Lee Affidavit").

[3] See Exhibit A to Wilsons' Motion (March 9, 2012).

had been completed before disputes arose between the parties and others, including creditors of OHI. At the center of the parties' dispute is a 99-year Lease Agreement entered into on September 21, 1990 (prior to the formation of the Joint Venture), between the Wilsons and Joann Santos Nauta (aka Joann Nauta Sahagon) as Lessors and Anna Wang Kao, as Lessee (hereinafter referred to as the "Lease Agreement").[4] The gravamen of OHI-Lee's cross-claims is that the Wilsons owed a fiduciary duty to OHI and Lee as "partners" in the Joint Venture and the Wilsons' failure to disclose the pre-existing Lease Agreement constituted a fraud and a breach of such fiduciary duty, resulting in damages to OHI and Lee.

### A. HRC Sues Wilsons, OHI and others to enforce Settlement Agreement; Wilsons file Cross-claim.

The instant matter originally arose out of a Complaint filed on March 28, 2003, by Hawaiian Rock Products Corporation ("HRC") against several defendants, including the Wilsons, OHI and Lee seeking to Quiet Title and to Compel Transfer of Certificates of Title, for Breach of Warranty, Contractual Indemnity, and Fraud.[5] The basis of the original Complaint to Quiet Title was essentially the alleged breach by the current parties of a "Settlement Agreement and Mutual Release of Claims" which the Wilsons, OHI and Lee executed with HRC on December 15, 2000 (the "HRC Settlement Agreement"). The HRC Settlement Agreement resolved an earlier lawsuit by HRC against OHI, Lee and the Wilsons entitled *Hawaiian Rock Products Corporation v. Ocean Housing, Inc., Jin Hee Lee, and Donald and Teresita Wilson,*

---

[4] Exhibit A to OHI's Exhibits In Support of Opposition to Motion To Dismiss; Decl. of Robert P. Kutz (May 9, 2012). The Lease Agreement indicates Anna Wang Kao as the Lessee, but the Decision and Order cancelling the Lease Agreement is in the case of *Wilson et al. v. Da Yu Overseas, Inc.,* CV0891-00 (Super. Ct. Guam)(*See, Judgment by Default* issued January 25, 2001)(Exhibit B to Wilsons' Mot. To Dismiss). In issuing this Decision and Order, this Court did not investigate the relationship between the Defendant in CV0891-00 and the Lessee Anna Wang Kao, but noted only that the Judgment in that case effectively cancelled the Lease Agreement *nunc pro tunc* August 2, 1994.

[5] *See* Settlement Agreement and Mutual Release of Claims, dated December 15, 2000 and attached as Exhibit A to HRC's Complaint to Quiet Title and to Compel Transfer of Certificates of Title, for Breach of Warranty, Contractual Indemnity, and Fraud (Mar. 28, 2003).

CV2124-99 (Super. Ct. Guam) (the "HRC Lawsuit").[6] The HRC Settlement Agreement acknowledged that the terms of that agreement did not affect or in any way modify or amend any of the terms of the Release and Settlement Agreement between OHI and the Wilsons (the "OHI-Wilson Release") which was executed on February 5, 2001 (ostensibly, to address OHI and the Wilsons' dispute over their 1995 Joint Venture Agreement).[7] During the course of the litigation, the claims of HRC and another party, Korando Corporation, as well as other entities and individuals came to be resolved. However, as part of their Answer to Korando Corporation's cross-claims against them – which have since been resolved – the Wilsons filed a cross-claim against OHI and Lee to quiet title based upon the terms of the OHI-Wilson Release (the "Wilson Cross-Claim") on April 14, 2006.[8] OHI and Lee responded by filing their own cross-claim against the Wilsons (the "OHI-Lee Cross-Claim") on May 19, 2009.[9] Only the claims of the Wilsons against OHI and Lee, and the claims of OHI and Lee against the Wilsons remain unresolved. On March 9, 2012, the Wilsons filed the instant Motion to Dismiss the OHI-Lee cross-claims.

**B.    OHI-Lee file Cross-claims against the Wilsons; Wilsons seek dismissal.[10]**

In addition to answering the allegations set forth in the Wilson Cross-Claim and asserting affirmative defenses thereto, on May 19, 2009, OHI and Lee brought the following

---

[6] *See* Exhibit 1 to Complaint To Quiet Title And To Compel Transfer of Certificates of Title, For Breach of Warranty, Comtractual Indemnity, And Fraud, (Super. Ct. Guam, March 28, 2003).

[7] *See* OHI's Exhibits In Support of Opposition To Motion To Dismiss (May 9, 2012) at Exhibit E, Decl. of Robert P. Kutz.

[8] Defendants Donald E. And Teresita S. Wilson's Answer to Cross-claim of Korando Corporation and Cross-claims for Suit to Quiet Title (Apr. 14, 2006)(originally filed against Korando Corporation, OHI, Ki Do Cha, Moon Sik Yoon, Jin He Lee and Roes 1-10).

[9] Cross-Defendants Ocean Housing, Inc. and Jin Hee Lee's Answer to Cross-claims of Korando Corporation and Donald E. Wilson and Teresita S. Wilson; Cross-Claim Against Donald E. Wilson and Teresita S. Wilson (May 19, 2009).

[10] The Wilson Cross-claims were filed on April 14, 2006, and the Wilsons had originally obtained a default judgment against OHI, Lee and other defendants on November 16, 2007, "citing the desire to evict squatters as the reason for the need for expediency." Decision and Order (Mar. 27, 2009)(Lamorena, P.J.). In his March 27, 2009 Decision and Order setting aside the default judgment, the Hon. Presiding Judge Alberto C. Lamorena III, ruled that OHI and Lee were permitted to answer the Wilson Cross-Claim, which they did on May 19, 2009.

-4-

cross-claims against the Wilsons: (1) Recission/Reformation of Contract (based on Fraud); (2) Breach of Fiduciary Duty; (3) Breach of Contract; (4) Mental Distress; and (5) Abuse of Process (collectively, the "OHI-Lee Cross-Claim"). *See* OHI-Lee Cross-Claim at ¶¶ 20-30 (May 19, 2009).[11] The Wilsons seek to dismiss the OHI-Lee Cross-Claim or, in the alternative for summary judgment in their favor. The Wilsons advance several arguments in support of dismissal, including that the 2001 OHI-Wilson Release bars all of the OHI-Lee Cross-Claim. *See* Wilsons' Reply at 3-5 (May 9, 2012).

### 1. First Cause of Action: Recission or Reformation of Contract

OHI and Lee seek recission and reformation of the JVA and the OHI-Wilson Release, claiming that the Wilsons "perpetuated a fraud" upon them "[b]y reason of the fraudulent and deceptive practices engaged in by WILSONS, including their failure to disclose vital information about the subject matter of the 1995 joint venture regarding the ownership and value of the land, including the existing encumbrances thereon . . . inducing them to enter into an alleged joint venture . . . ." OHI-Lee Cross-Claim at ¶ 22 (May 19, 2009).

The Wilsons seek to dismiss this cause of action, first, on the basis that OHI-Lee fail to plead fraud with particularity, in violation of GRCP 9(b) and applicable case law. They also argue that this first cause of action should be dismissed because, under the terms of the JVA, the Wilsons did not owe any duty to OHI-Lee to disclose the existence of the previous Lease; and, finally, the Lease complained of was cancelled and terminated *nunc pro tunc* to August 2, 1994 pursuant to a Judgment by Default issued by the Honorable Judge Michael J. Bordallo on

[11] The Cross-Claim incorporates by reference OHI's and Lee's April 14, 2008 Memorandum of Points and Authorities in Support of Motion to Vacate Judgment and the various documents attached to the Memorandum. *See* OHI-Lee Cross-Claim at ¶ 20 (May 19, 2009). The Court considered those documents in rendering this decision as allowed under GRCP 10. With respect to the incorporation by reference of "all antecedent pleadings in this case, including motions, oppositions thereto," on the parties' request, the Court also considered the Decision and Order on Defendants Wilsons' Motion for Summary Judgement, Plaintiff's Counter Motion For Summary Judgement Against the Wilsons, Plaintiff's Motion For Summary Judgement Against Defendant Korando and Defendant Korando's Motion to Amend issued on March 6, 2006. OHI withdrew its Fifth Cause of Action for Abuse of Process; therefore, the Court does not consider it here. See Opp'n. Mot. to Dismiss at ¶¶ 44-45 (May 9, 2010).

January 25, 2001 in *Donald E. and Teresita S. Wilson and Joann S. Nauta aka Joann Nauta Sahagon vs. Da Yu Overseas, Inc.*, CV0891-00 (Super. Ct. Guam, Jan. 25, 2001) and therefore, the Wilsons had no obligation to disclose a previously failed lease. Motion at 7-8 and Exhibit B (Mar. 9, 2012).

OHI-Lee do not address the Wilsons' argument that the fraud claim fails to state with particularity the circumstances constituting fraud. Instead, OHI-Lee counter that the Wilsons owed them a fiduciary duty under the law of partnership; therefore, even though OHI may have failed to conduct its own due diligence prior to entering into the JVA, once the parties entered into that agreement, the obligation changed and "WILSONS owed OHI an *absolute duty* of disclosure of the existence of the lease and its terms, and if it had been cancelled or terminated by May 1995, any documentation to support such termination." Opp'n. Mot. Dismiss at 6 (Mar. 9, 2010) (emphasis added).

### 2. Second Cause of Action: Breach of Fiduciary Duty

Consistent with the allegations set forth in its First Cause of Action, OHI and Lee continue to advance a claim that the Wilsons owed OHI and Lee a fiduciary duty "of utmost honesty, full disclosure, and direct and fair doing," attributed to the parties' JVA. OHI-Lee Cross-Claim at ¶ 23 (May 19, 2009). They further allege that this fiduciary duty was breached when the Wilsons "deliberately failed to inform OHI and Lee that the property in question had been grossly overvalued by WILSON" and of the existence of the Lease Agreement. *Id.* OHI-Lee also assert that the Wilsons, because of this purported fiduciary duty, should have assisted Lee, who they knew was not "a native speaker of English and was completely unfamiliar with Guam law and regulation regarding the nature of a joint venture and obligations of co-venturers thereunder" to resolve disputes with the venture's creditors, and that the Wilsons' failure to

-6-

cooperate with these creditors in settlement of the claims against OHI and Lee also breached their fiduciary duties. *Id.* at ¶ 23.

The Wilsons seek to dismiss this cause of action, arguing that although there is an "implied covenant of good faith and fair dealing" in every contract, this implied covenant "does not require the WILSONS to disclose possible defects in the title or any prior failed transactions [such as the Lease Agreement]. WILSONS made no agreement to warrant a defect free title to the property." Motion at 8 (Mar. 9, 2012). The Wilsons also acknowledge that, although they did enter into the Lease Agreement on September 21, 1990, the Lease Agreement was cancelled and terminated by a Judgment made *nunc pro tunc* to August 2, 1994 – which pre-dates the JVA. The Wilsons argue additionally that the Second Cause of Action is barred by the statute of limitations requiring any action concerning a written contract to be filed within four (4) years andthat OHI-Lee are barred from bringing any action relating to the JVA pursuant to the OHI-Wilson Release which the parties entered into on February 5, 2001 and later amended on November 30, 2001. The Wilsons argue that the Release "prevents OHI and LEE from bringing allegations against WILSON dating from the original contract terms [in the JVA] by the statute of limitations as well as the doctrines of laches and collateral estoppel." *Id.* at 9. Finally, the Wilsons argue that any action to invalidate the OHI-Wilson Release had to have commenced no later than November 30, 2005.

### 3.    Third Cause of Action: Breach of Contract

OHI and Lee's third cause of action against the Wilsons is for breach of the JVA and the OHI-Wilson Release. OHI and Lee argue that the breach of the JVA occurred due to: (1) The Wilsons' failure of adequate consideration for the JVA "by failing to provide sufficient documentation to support the valuation of the real property and by arbitrarily assigning a

-7-

property value of $1,000,000" and, further, that the grant of a license to OHI-Lee to enter onto the premises was not sufficient consideration because such license was subject to the Lease Agreement. OHI-Lee Cross-Claim at ¶ 24(A-B) (May 19, 2009). The Wilsons are also alleged to have breached the Release Agreement by failing: (1) to participate in settlement negotiations with the joint venture's creditors and by refusing to quitclaim or transfer rights to individual properties which could have been used to satisfy creditors' claims; and (2) "to notify OHI and Lee of the true state of this litigated matter and to seek OHI and Lee's cooperation in the litigation and by conducting frivolous litigation regarding the transfer of certificates of title to plaintiff Hawaiian Rock [which was a further breach of the Wilsons'] contractual duty of cooperation, good faith and fair dealing as to OHI and Lee." Id. at ¶ 24(C-D). OHI and Lee seek $3,000,000 in damages for this alleged breach of contract by the Wilsons.

### 4. Fourth Cause of Action: Mental Distress

Lee alleges that the Wilsons have harassed and threatened him at various times between "1999 and the present day" and that the Wilsons verbally abused Lee when he "sought to investigate storage of Wilson's personal property on one of the portions of the joint venture property which had been allocated to OHI and Lee." Id. at ¶ 27. Claims also include other behavior on behalf of the Wilsons which have caused great distress and anguish to Lee...in the amount of $1,000,000.00.... ." Id. at ¶¶ 27-28. The Wilsons contend that the claim should be dismissed because it is time-barred pursuant to 7 GCA §§ 11307. Motion at 10-11 (Mar. 9, 2009).

### C. Provisions of the OHI-Wilson Release.

The Joint Venture was effectively terminated and the partnership between the Wilsons and OHI ended as of February 5, 2001. OHI-Wilson Release at 2, ¶ 1 (Feb. 5, 2001). The

-8-

provisions of the OHI-Wilson Release with regard to the limits of the universe of the parties' release of claims against each other state as follows:

5. Indemnification by OHI and Release. OHI fully and forever releases and discharges the Wilsons, their successors, heirs, assignees, parents, subsidiaries, affiliates, directors, officers, managers, employees, attorneys, partners, investors, shareholders, beneficiaries, guarantors, indemnitors, insurers, agents servants, affiliated or independent contractors, and affiliated partnerships, persons and entities in their capacities as such from any and all claims, causes of action, demands and charges of whatever nature, known or unknown, arising out of or that could have been asserted in connection with the Joint Venture Agreement regardless of the legal theory or purported basis of legal duty or liability on which any such claim may be asserted. OHI shall at all times defend and hold the Wilsons harmless from any and all claims, lawsuits or other legal proceedings, whether threatened or commenced and whether legal or equitable in nature, arising out of or by reason of the Wilsons having been a party to the Joint Venture Agreement or asserted against the Joint Venture and/or the Wilsons in connection with OHI's construction of the Improvements, all such threatened or actual claims, lawsuits or other legal proceedings are hereinafter referred to as "Claims." In addition, OHI shall indemnify and hold the Wilsons harmless for any judgments, cost, loss, damage, or expense, including reasonable attorneys fees, arising from any Claims. All such judgments, costs, losses, damages, and expenses are hereinafter referred to as "Costs and Expenses."

OHI-Wilson Release at 4-5, ¶ 5 (Feb. 5, 2001).

6. Indemnification by Wilsons. The Wilsons shall indemnify and hold OHI, its officers, directors, shareholdrs, employees, agents and representatives, harmless from and against any and all claims, demands, actions, damages, liabilities, costs and expenses (including, attorneys fees) asserted against OHI arising out of or in connection with any actions undertaken by the Wilsons with respect to the Wilson Property unless the same is caused by the acts or omissions of OHI and its agents.

*Id.* at 6, ¶ 6.

The OHI-Wilson Release also contains certain representations and warranties which are pertinent to the instant Motion, including the following:

9.2. Each party has received independent legal advice from their attorneys with respect to the advisability of making the settlement provided for in this Agreement and with respect to the advisability of executing this Agreement.
...

-9-

9.4.    Each party to this Agreement has made such investigation into the facts pertaining to this settlement and this Agreement as it deems necessary. ...

9.6.    Each term of this Agreement is contractual and not merely a recital.

9.7.    Each party to this Agreement is aware that it may hereafter discover claims or facts in addition to or different from those it now knows or believes to be true with respect to the matters related herein. Nevertheless, it is the intention of the parties to fully, finally and forever settle and release all such matters, and all claims relative thereto, which do not exist, or may exist, or heretofore have existed between them. In furtherance of such intention, the releases given herein shall be and remain in effect as full and complete releases of all such matter, notwithstanding the discovery or existence of any additional or different claims or facts relative thereto. The parties expressly waive the benefits of *Title 18 Guam Code Annotated § 82602, formerly Civil Code of Guam § 1542*, and the provisions of any similar statute, rule, ordinance or legislation from any other applicable jurisdiction. Notwithstanding anything to the contrary in this subparagraph, the provisions of this subparagraph shall not apply to facts (or claims which may be based thereon) which are intentionally or fraudulently withheld by a party from the other.

9.8    The parties understand and acknowledge that the releases hereunder are intended to cover all claims for damages that exist as of the date of this Agreement but which the parties may not now know exist, and which, if known, could materially affect the parties' decision to execute this Agreement, regardless of whether the lack of knowledge is due to oversight, mistake, ignorance, negligence or any other cause, other than fraudulent conduct by any party to this Agreement.

*Id.* at ¶¶ 9- 9.8.

## DISCUSSION

I.    CONVERSION OF WILSONS' RULE 12(B)(6) MOTION INTO A RULE 56 MOTION.

The Wilsons' Motion to Dismiss pursuant to Rule 12(b)(6), or in the alternative, for summary judgment motion, will be treated as one for summary judgment because the court has been presented with and has considered "matters outside of the pleadings" in rendering this written Decision and Order. *Core Tech Intern. Corp. v. Hanil Engineering & Const. Co., Ltd.,* 2010 Guam 13 ¶ 29 (citing *Newby v. Government of Guam,* 2010 Guam 4 ¶ 14 (quoting Guam R.

-10-

Civ. P. 12(b) and citing *Carter v. Stanton*, 405 U.S. 669, 671 (1972), numerous citations omitted)("The general rule is that a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, must be converted into a Rule 56 motion for summary judgment whenever 'matters outside the pleadings' are presented to and considered by the Court. . . ."). In this instance, the parties presented several extrinsic documents which the Court considered in ruling on the instant motion, including, but not limited to: the JVA; the Lease Agreement; the several Decisions issued by Presiding Judge Lamorena in this case; the HRC Settlement Agreement; the Complaint in *Teresita S. Wilson, Donald Eugene Wilson, et al. v. Da Yu Overseas, Inc.*, CV0594-94 (Super. Ct. Guam, April 14, 1994); the Affidavit of Jin Hee Lee in Opposition to Motion To Dismiss; Letter from W. Nicholas Captain, MAI, CRE, President of Captain, Hutapea & Associates dated February 11, 2011; the OHI-Wilson Release; and copies of OHI's contractor's licenses for the period of 1995 through 2000.[12] The pleadings relating to the motion to dismiss also incorporate by reference factual assertions and legal arguments contained within earlier filings on the record in this case dating anywhere from 2003 to 2009 and later, all of which the Court had to review in order to adequately address all of the issues raised by the parties in the instant motion. Consequently, conversion is required under the circumstances.

---

[12] The Court would not have been required to convert the Wilsons' Motion to Dismiss into a summary judgment motion if the only extrinsic evidence presented to and considered by it were limited to documents which were "integral" to the plaintiff's complaint and "dispositive" in the dispute. The Guam Supreme Court noted an exception to the rule of conversion is where the document is one "whose authenticity cannot be questioned and on which plaintiff's complaint "necessarily relies." *See Newby v. Government of Guam*, 10 Guam 4 ¶15. Both the JVA and the OHI-Wilson Release fall within this exception as the parties both rely upon the agreements in support of their respective claims. Indeed, the authenticity and the validity of the OHI-Wilson Release have already been adjudicated pursuant to the Decision and Order issued by Presiding Judge Alberto C. Lamorena III on March 6, 2006. In that Decision and Order, the Court took judicial notice "that the agreement between the Wilsons and OHI referenced in the [HRC] Settlement Agreement is the [OHI-Wilson] Release Agreement" and found also that the Release Agreement was incorporated into the HRC Settlement Agreement. Dec. & Order at 6-7 (March 6, 2006). The Contractor's Licenses would also qualify as self-authenticating documents pursuant to Guam R. of Evid. Rule 902.

## A.  Rule 56 Summary Judgment.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Bank of Guam v. Flores*, 2004 Guam 25 ¶ 8 (quoting *Manvil Corp. v. E.C. Gozum & Co.*, 1998 Guam 20 ¶ 6). "There is a genuine issue of material fact, if there is 'sufficient evidence' which establishes a factual dispute requiring resolution by a fact-finder." *Guam Pacific Enterprise, Inc. v. Guam Poresia Corp.*, 2007 Guam 22 ¶ 8 (quoting *Iizuka Corp. v. Kawasho Int'l (Guam), Inc.*, 1997 Guam 10 ¶ 7). The dispute must involve a material fact, "which is a fact that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *Id.* (quoting *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)).

When ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences that can be drawn from those facts. *See Flores*, 2004 Guam 25 ¶ 28. The Court must also resolve any factual inconsistencies in favor of the non-moving party. *Id.* at ¶ 27.

As the non-moving party, OHI's and Lee's burden to defeat the motion "was to set forth specific facts showing that there is a genuine issue for trial." Guam R. Civ. P. 56(e). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). OHI and Lee may not rely on unsupported or conclusory allegations of his pleading, but must present some

"significant probative evidence tending to support the complaint." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1990) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968).

## II. THE OHI-WILSON RELEASE BARS RECOVERY OF OHI CROSS-CLAIMS ONE THROUGH THREE.

### A. OHI and the Wilsons owed each other a fiduciary duty by virtue of the JVA.

The OHI-Lee Opposition to the Wilsons' Motion to Dismiss is based largely on the contention that the Wilsons breached their fiduciary duty to the partners of the Joint Venture by failing to provide *all* relevant information about the property to the partnership – specifically, that there was a Lease Agreement on the real property which was the Wilsons' contribution to and consideration for the Joint Venture – and that the Wilsons' failure to provide this information to OHI resulted in the demise of the joint venture and damages to OHI.

The law with regard to the duties of members of a joint venture to each other is clear – each owes the other the utmost good faith, fairness and honesty in their dealings. *Ghiz v. Millett*, 222 P.2d 982, 985 (Ariz. 1950), *aff'd* 224 P.2d 650 (1950)("The relationship between joint adventurers, like that existing between partners, is fiduciary in character and imposes on all participants the obligation of loyalty to the joint concern, and of the utmost good faith, fairness and honesty in their dealings with the other with respect to matters pertaining to the enterprise. This is especially true of those to whom the conduct of the transaction, or the property thereon is entrusted ... [P]arties who enter into a joint adventure engage in a common enterprise for their mutual benefit, and have a right to demand and expect from their associates good faith in all that relates to their common interests.") The fiduciary nature of a joint venture relationship also requires the complete disclosure of everything affecting the relationship. *See, e.g., Goben v. Barry*, 676 P.2d 90, 97 (Kan. 1984); *Carroll v. Caldwell*, 12 Ill.2d 487, 197 N.E.2d 69 (1958);

*Martin v. Hunter*, 179 Kan. 578, 297 P.2d 153 (1956). The relationship requires that each refrain "from taking any advantage of one another by the slightest misrepresentation, concealment, threat or adverse pressure of any kind." *See De Santis v. Dixon*, 72 Ariz. 345, 350, 236 P.2d 38, 41 (1951). These duties and obligations continue until the joint venture is finally terminated. *Marmis v. Solot Co.*, 573 P.2d 899, 903 (Ariz. Ct. App. 1977). Notwithstanding the parties' general obligations to each other as fiduciaries as a result of their JVA, however, OHI's claims stemming from the JVA are barred by the OHI-Wilson Release.

**B.     The Release Agreement bars OHI's recovery as a matter of law.**

As set forth in greater detail, *supra*, the parties entered into the OHI-Wilson Release on February 5, 2001, in order "to settle and determine their respective rights and claims pursuant to the Joint Venture Agreement concerning the Wilson Property and the Homes and improvements on the Wilson Property and have agreed to settle and determine their respective rights and claims in the manner hereinafter stated." OHI-Wilson Release at 1-2, Recitals (Feb. 5, 2001). The Release also clearly defined the parties' obligations with regard to the payment of mechanic's and additional liens as well as to each other. It is critical that the parties' Release included a specific waiver of the benefits and protections of 18 G.C.A. § 82602, which provides that, "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." *See* OHI-Wilson Release at ¶ 9.7 ("The parties expressly waive the benefits of *Title 18 Guam Code Annotated § 82602, formerly Civil Code of Guam § 1542*, and the provisions of any similar statute, rule, ordinance or legislation from any other applicable jurisdiction....").

-14-

OHI claims that it is entitled to rescind the JVA "and any ancillary contracts" (which presumably includes the OHI-Wilson Release) due to the Wilsons' alleged fraud and misrepresentation about the existence of the 99-year lease agreement and the "true value" of the property as set forth in the valuation conducted by Captain Hutapea & Associates in 2011. *See* Opp'n. Mot. Dismiss at 9, ¶¶ 28-32; Exhibit E to OHI's Exhibits In Support of Opp'n. Mot. Dismiss (May 9, 2010). However, at the time the Release Agreement was executed by OHI and the Wilsons on February 2, 2001, OHI and Lee had *actual knowledge* of the 99-year Lease Agreement and its impact on the joint venture and had such knowledge since 1999 – two years prior to the execution of the Release with the Wilsons. In his Affidavit in Opposition to the Motion to Dismiss, Lee attests as follows:

> I did not learn of the 99-year lease on the subject property *until 1999*, five years after the venture was formed and approximately $3M expended on construction of residences on the property. If I had known of this lease, I would never had entered a joint venture or other arrangement with the Wilsons without the express consent of the lessees of the property, or appropriate documentation showing that their lease had been terminated.

Lee Affidavit at 3, ¶6 (May 9, 2002)(emphasis added)(*See also* 5, ¶14). Despite having actual knowledge of what OHI claims is to have been fraud in the inducement of the JVA, a material misrepresentation and a breach of the Wilsons' fiduciary duty to OHI, Lee, on behalf of OHI, executed the Release Agreement which extended to the entire universe of possible claims which it had or may have had against the Wilsons.

OHI's Recission claim also infers that the Release does not extend to the fraud alleged to have been responsible for OHI entering to joint venture, i.e., the Wilsons' concealment of the 99-year lease and the misrepresentation regarding the value of the property, and, indeed the last sentence of Paragraph 9.7 of the Release may seem to provide a basis for this argument:

-15-

> Notwithstanding anything to the contrary in this subparagraph, the provisions of this subparagraph shall not apply to facts (or claims which may be based thereon) which are intentionally or fraudulently withheld by a party from the other.

OHI-Wilson Release at ¶ 9.7 (Feb. 5, 2001). However, the Lease Agreement and the low valuation are the same facts upon which OHI's First, Second and Third Causes of Action are based and these facts were known to, or should have been known to, OHI at the time of the 2001 Release.

Under appropriate circumstances, such as here, a fraudulent inducement claim may be subject to release. See, e.g., *Nycal Corp v. Inoco PLC*, 166 F.3d 1201, 1202 (2d Cir. 1998); *Finz v. Schlesinger*, 957 F.2d 78, 83 (2d Cir. 1992); *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 527-28 (2d Cir. 1985); *Alleghany Corp. v. Kirby*, 333 F.2d 327, 333 (2d Cir. 1964). However, where a party releases a claim for fraud, it can later challenge that release for fraudulent inducement "*only* by identifying a *separate and distinct fraud from that contemplated by the agreement.*" *DIRECTV Group, Inc. v. Darlene Investments, LLC*, 2006 WL 2773024 at *4 (S.D.N.Y. 2006)(citing *Alleghany Corp.*, 333 F.2d at 333; *Finz*, 957 F.2d at 83; *Bellefonte*, 757 F.2d at 527-28)(emphasis added). Where the "new" fraud is "a species of the same ... fraud" underlying the original agreement, the claim is deemed released. *Nycal Corp.*, 166 F.3d at 1202.

In this case, OHI's claim for rescission of the OHI-Wilson Release which was executed in 2001, after OHI and Lee learned of the Lease Agreement does not set forth any "new" fraud which falls within the exception contemplated by the last sentence of Paragraph 9.7. The Wilsons' failure to disclose the existence of the Lease Agreement and matters inexorably

intertwined therewith, including the "actual" valuation of the property, is part and parcel the same fraud that prompted the OHI-Wilson Release.[13]

Additionally, the Lease Agreement was nullified by the Decision and Order *nunc pro tunc* that was issued by Judge Bordallo in January 25, 2001, and which also predates the OHI-Wilson Release. Thus, as a matter of law, it was as if the Lease Agreement did not exist as of the parties' JVA and certainly was not grounds for any claim of fraud excepted in the Release Agreement.[14]

Furthermore, in stark contrast to his dealings with the Wilsons at the time of the JVA as set forth in the Lee Affidavit, OHI and Lee were represented by counsel and received independent legal advice from "their attorneys with respect to the advisability of making the settlement provided for in this [Release] Agreement" (OHI-Wilson Release at ¶ 9.2 (Feb. 5, 2001)); they "made such investigation into the facts pertaining to this settlement and this Agreement as it deems necessary" (*Id.* at ¶ 9.3); they "understand and acknowledge that the releases ... are intended to cover all claims for damages that exist as of the date of this [Release] Agreement but which the parties may not now know exist, and which, if known, could materially affect the parties' decision to execute this Agreement, regardless of whether the lack of

[13] OHI and Lee submit for the Court's consideration the 2011 letter from Captain Hutapea & Associates as support for the Wilsons' misrepresentation as to the "true value" of the Wilson property "retrospective as of May 8, 1995," however the letter notes that "[o]ur research did not disclose evidence of a ground lease termination document." Exhibit E to OHI's Exhibits In Support of Opp'n Mot. Dismiss (May 9, 2010). This statement leads the Court to believe that the valuation did not include a consideration of the Decision and Order issued by Judge Michael Bordallo in *Donald E. & Teresita S. Wilson and Joann S. Nauta aka Joann Nauta Sahagon vs. Da Yu Overseas, Inc.*, CV891-00 (Jan. 25, 2001), nullifying the Lease Agreement *nunc pro tunc* to 1994. Thus, OHI has not presented any "new fraud" which may be excluded from the Release. Moreover, OHI and Lee claim that they were made aware of the Lease Agreement in 1999 yet failed to pursue any objective valuation of the property until 2011 – 12 years after it discovered the existence of the Lease Agreement and 10 years after the Release was executed. OHI cannot delay any investigation for a decade and then divert the blame to the Wilsons for failing to disclose material information pursuant to a fiduciary duty that ceased to exist since 2001.

[14] OHI and Lee argue that this Court could and should nullify the 2001 Decision and Order of the Honorable Michael J. Bordallo which cancelled the Lease Agreement *nunc pro tunc* to 1994. However, that Decision and Order was issued by a court of competent jurisdiction sitting in a matter not assigned to this Court and OHI and Lee provide no reasonable basis in fact or in law which supports their request.

knowledge is due to oversight, mistake, ignorance, negligence or any other cause, other than by fraudulent conduct by any party to this Agreement" (*Id.* at ¶ 9.8).

In February, 2001, OHI and Lee had knowledge of the 1995 Lease Agreement, had the benefit and advice of counsel and waived their rights to the protection of Guam law with respect to general releases when it executed a detailed 11-page Release and Settlement Agreement with the Wilsons. It is, therefore, against public policy to allow OHI's claims to survive the OHI-Wilson Release under the circumstances. *See Texas Standard Oil & Gas, L.P. v. Frankel Offshore Energy, Inc.*, 394 S.W.3d 753, 774 (Texas Ct. App. 14th Dist. 2012)("Refusing to honor a settlement agreement—an agreement highly favored by the law—under these facts would invite unfortunate consequences for everyday business transactions and the efficient settlement of disputes. After-the-fact protests of misrepresentation are easily lodged, and parties who contractually promise not to rely on extra-contractual statements— more than that, promise that they have in fact not relied upon such statements—should be held to their word.... If disclaimers of reliance cannot ensure finality and preclude postdeal claims for fraudulent inducement, then freedom of contract, even among the most knowledgeable parties advised by the most knowledgeable legal counsel, is grievously impaired. Axiomatically, fiduciaries, like any other business associates, might wish to ensure finality to their disputes. Thus, their expressed intent to ensure finality, via a fraudulent-inducement release or disclaimer of reliance, as well as their freedom to contract, should be accorded the same respect as the intent of other parties"). Because the OHI-Wilson Release bars OHI from asserting its cross-claims against the Wilsons, the Wilsons are entitled to summary judgment in their favor.[15]

---

[15] The Wilsons also assert that the OHI-Lee Cross-claims should be dismissed because "there was no business license for any of the years that OHI or LEE served as the general contractor as part of the JVA." Motion at 15 (Mar. 9, 2012). Because the Court has ruled that OHI's cross-claims fail as a matter of law pursuant to the OHI-

-18-

## II. OHI'S CROSS-CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

Even if the above claims were not barred by the Release – which they are – OHI's cross-claims are dismissed as having been brought beyond the statute of limitations. The claims for Rescission/Reformation (First Cause of Action) and Breach of Fiduciary Duty (Second Cause of Action) are each subject to a 3-year statute of limitations period. *See* 7 GCA § 11305 (3-year statute of limitation for fraud claim); 7 GCA § 11305(d) (3-year statute of limitation for breach of fiduciary duty claim). OHI's claim for Breach of Contract (Third Cause of Action) must be brought within 4-years of the breach which is the subject of the complaint. *See* 7 GCA § 11303(a) (4-year statute of limitation for breach of contract claim).

The Guam Supreme Court in *Gayle v. Hemlani* has confirmed the fundamental principle of law that the statute of limitations on an action begins to run when "the plaintiff suspects or should suspect that his injury was caused by wrongdoing or that someone has done something wrong to him." 2000 Guam 25 ¶ 24 (citing *Custodio v. Boonprakong et al.*, 1999 Guam 5 ¶ 27). The Supreme Court further observed that:

> A plaintiff need not be aware of the specific acts necessary to establish the claim. . . . Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, he must decide whether to file suit or sit on his rights. . . . Consequently, if a suspicion exists, the plaintiff cannot sit back and wait for the facts to find him as the burden of finding the facts falls upon his shoulders.

*Id.*

Here, the statute of limitations period began to run as soon as OHI became suspicious of wrongdoing. That suspicion came in 1999, when Lee, the president of OHI, discovered that a

---

Wilson Release, the Court does not rule on the licensing issue. Additionally, because this Court finds that the OHI-Wilson Release bars OHI's recovery against the Wilsons for all actions arising out of the JVA as a matter of law, the Court does not reach the question of whether the OHI-Lee Cross-Claim adequately pleads "Fraud" as required under Guam R. Civ. Proc. Rule 9(b).

-19-

99-year lease existed on the property. *See* Lee Affidavit at 3, ¶ 6 (May 9, 2002). It was at this time that OHI knew or should have known that there was a reasonable basis for suspecting the possible unraveling of the Joint Venture and a breach of the JVA as well as the fiduciary duties attendant thereto and conducted a reasonable investigation into the existence of the Lease Agreement. To its detriment, OHI posits that because a fiduciary duty existed between OHI and the Wilsons, it did not need to perform any investigation of its own or conduct any due diligence, implying that where a fiduciary duty exists, all reasonableness in business dealings is apparently thrown out the window.[16] This is a complete misunderstanding of the law.

Regardless of whether a fiduciary relationship existed, OHI was still required to exercise reasonable diligence in discovering wrongful acts. "The existence of a fiduciary relationship between the parties is a fact to consider in determining whether a plaintiff has exercised reasonable diligence in the inquiry of the existence and cause of his injury." *Gayle*, 2000 Guam 25 ¶ 25 (citing *Bourland v. Salas*, DCA Civ. No. 82–0224A, 1986 WL 68919 (D. Guam Ap. Div., Oct. 24, 1986)). "[A]lthough the relationship does relax the requirement of diligent inquiry, discovery does not mean actual knowledge." *Id.* "Discovery occurs when a plaintiff could have discovered the wrongful acts with reasonable diligence." *Id.* "Reasonable diligence is tested by an objective standard, and when the uncontroverted evidence irrefutably demonstrates that the plaintiff discovered or should have discovered the fraudulent conduct, the issue may be resolved by summary judgment." *Id.* As stated above, OHI was suspicious of the Wilsons' alleged wrongdoings as early as 1999. OHI then had the obligation under *Hemlani* to decide whether to file suit or sit on its rights. OHI apparently chose the latter, and did so for over

---

[16] OHI-Lee's Opp'n. Mot. Dismiss at ¶¶ 11-12 (May 9, 2010).

12 years after its initial discovery. As a result, its claims are time-barred and the Wilsons are entitled to summary judgment on the issue.

## III.   LEE'S MENTAL DISTRESS CLAIM (FOURTH CAUSE OF ACTION) IS TIME-BARRED.

Although it is unclear whether Count 4 is a claim for libel or slander, harassment, or intentional infliction of emotional distress, the Court finds that the claim should be dismissed on statutes of limitation grounds. Claims for libel or slander are subject to a 1-year state of limitation. *See* 7 G.C.A. § 11307(3). Harassment and intentional infliction of emotional distress claims are subject to a 2-year statute of limitation period. *See* 7 G.C.A. § 11306(a).

In this case, the conduct complained of occurred in the 1990s, with the latest incident allegedly occurring in April, 2007, well over two years before the date the Cross-Claim was filed on May 19, 2009. *See* OHI-Lee Cross-Claim, at 5 ¶ 23 (May 19, 2009). Although his Cross-Claim asserts that the harassment and threats occurred "at various times between 1999 and [2009]," Lee even admits that he had no further direct contact with the Wilsons after the April, 2007 confrontation. *See* Declaration of Jin Hee Lee Re: Motion to Vacate, at 8 ¶ 20 (Apr. 14, 2008). Therefore, the Wilsons are entitled to summary judgment on Count 4.

## IV.   WILSONS HAD NO OBLIGATION TO ASSIST OHI IN RESOLVING LIENS.

OHI also claims that the Wilsons breached the Release by breaching their duty of good faith and fair dealing by failing: (1) to participate in settlement negotiations with the venture's creditors and by refusing to quitclaim or transfer rights to individual properties which could have been used to satisfy creditors' claims; and (2) to notify OHI and Lee of the true state of this litigated matter and to seek OHI and Lee's cooperation in the litigation and by conducting frivolous litigation regarding the transfer of certificates of title. *See* OHI-Lee Cross-Claim, at ¶ 24(C-D)(May 19, 2009). None of the acts were ever made a part of the OHI-Wilson Release

-21-

and, as the Guam Supreme Court has recognized, "the relevant case law supports the notion that a 'covenant of good faith and fair dealing. . . cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement. " *Quijano v. Atkins-Kroll*, 2008 Guam 14 ¶ 2 n. 2 (quoting *Guz v. Bechtel Nat'l Inc.*, 8 P.3d 1089, 1110 (Cal. 2000)). Indeed, all of the obligations to resolve materialmen liens on the property was left solely to OHI. OHI has submitted no set of facts which would contradict the evidence before this Court that the Wilsons were not required to assist OHI in resolving the liens. As such, the Wilsons are entitled to summary judgment on OHI-Lee's claim of breach of duty of good faith and fair dealing.

## V.     OHI'S REQUEST FOR AN ACCOUNTING IS DENIED.

OHI's Opposition to Wilsons' Motion to Dismiss is not simply an "opposition" to the motion, but is also filled with requests for this Court to grant certain relief not pled in the OHI-Lee Cross-Claims, such as the request to nullify Judge Bordallo's Decision and Order in a wholly unrelated case not even before this Court and a counter-motion to dismiss the Wilsons' Quiet Title claim (which was not brought properly before the Court and which was not addressed by the Wilsons in their Reply) and, finally, a request to permit OHI to amend its cross-claim to state a cause of action against the Wilsons for an accounting – a final request which is well beyond any reasonable time frame for OHI to amend its Answer and Cross-Claims.

It is well settled that the right to an accounting is premised "upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest." *Madison Hudson Assoc., LLC v. Newmann*, 2005 WL 1941229 at *11 (N.Y. Sup. 2005)(quoting *Palazzo v. Palazzo*, 503 N.Y.S.2d 381 (App. Div., 1st Dep. 1990). Moreover, in order to obtain a court

-22-

order for an accounting, the plaintiff "must show a demand for an accounting and a failure or a refusal by the partner with the books, records, profits or other assets of the partnership in his possession to account to the other partner." *Id.* at 12 (quoting *Blaustein v. Lazar Borck & Mensch*, 161 A.D.2d 507, 508, 555 N.Y.S.2d 776 (App. Div. 1st Dept. 1990).

The Court denies OHI's request to amend its Cross-Claim to state a cause of action for accounting because the Joint Venture terminated as of 2001, pursuant to the Release Agreement. At that time, the fiduciary duty or any other duty that the parties may have owed to each other by virtue of the joint venture ceased, and, therefore, OHI is not entitled to an accounting as a matter of law. Additionally, OHI has not established that, even if a fiduciary duty exists (which it does not), it had made a demand for an accounting met with a refusal by the Wilsons.

## V.    OHI'S REQUEST TO DISMISS WILSONS' CROSS-CLAIMS.

OHI claims that if its cross-claims are barred by the statute of limitations, then the Wilsons' cross-claims must also be similarly barred because "any breach of the parties Release and Settlement Agreement would have occurred on or before November 30, 2001." Opp'n. Mot. Dismiss at 16, ¶ 53 (May 9, 2010). This argument completely misstates the Wilsons' cross-claims. The Wilsons assert that the parties entered into the Release Agreement on February 5, 2001, which was later amended on November 30, 2001 (Wilson Cross-Claim at ¶ 11 (April 14, 2006)); that under the terms of the Release Agreement, OHI was required to remove certain liens from a portion of the Wilson lands (*Id.* at ¶ 12); that OHI's failure to remove the liens from the property constitutes a breach and material event of default of the *Release Agreement*, resulting in OHI's forfeiture of all of its interests in the property (*Id.* at 7, ¶13)(emphasis added). Contrary to OHI's contention, a breach of the conditions of the Release Agreement (*see* ¶¶ 5.3, 7.b.(ii) and 8)

-23-

could only have occurred *after* its execution and *not before* November 30, 2001. Consequently, OHI's request to dismiss the Wilsons' Cross-claim is denied.

## VI.   ATTORNEYS FEES.

OHI and Lee seek attorney's fees under Paragraph 5 of the OHI-Wilson Release. Having ruled that the cross-claims of OHI and Lee are dismissed for the reasons herein stated, OHI and Lee are not entitled to any award of attorney's fees. The Wilsons, on the other hand, by their Reply, seek attorneys fees pursuant to the same provision invoked by OHI.

With regard to attorney fees in civil cases, Guam follows the "American Rule," which provides that each party bears its own litigation expenses, including attorney fees. *Rahmani v. Park*, 2011 Guam 7 ¶ 59 (citing *Sule v. Guam Bd. of Dental Exam'rs*, 2008 Guam 20 ¶ 52 (quoting *Fleming*, 2003 Guam 4 ¶ 7)). However, statutory or contractual provisions authorizing attorney fees are exceptions to the American Rule. *Id.* Paragraph 5 of the Release provides, in relevant part, as follows:  "OHI shall indemnify and hold the Wilsons harmless for any judgments, cost, loss, damage, or expense, including reasonable attorneys fees, arising from any claims." OHI-Wilson Release at 4, ¶ 5 (Feb. 5, 2001). As the Wilsons have been forced to defend against the cross-claims of OHI and Lee, which arise out of and are specifically encompassed in the Release Agreement, the Wilsons are entitled to reasonable attorneys fees and costs to be determined at a hearing on the matter.

## CONCLUSION

Based on the foregoing: (1) the Wilsons' Motion to Dismiss or, In the Alternative, For Summary Judgment is GRANTED;  (2) OHI-Lee's request that the Wilsons' Cross-Claim be dismissed is DENIED; (3) OHI-Lee's request for attorney's fees is DENIED; and (4) the

Wilsons' request for reasonable attorney's fees and costs is GRANTED, with the amount of such fees and costs to be determined at a subsequent hearing on the matter.

**SO ORDERED**, this 09ᵗʰ day of September, 2013.

_____

**HONORABLE MARIA T. CENZON**
Judge, Superior Court of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

9.9.13

Jesse C. Franquez
Deputy Clerk, Superior Court of Guam

-25-